## McCORMICK HARVESTING MACHINE CO. v. WATSON.

1. Under the code of this state the seller of personal property does not, except as therein specifically provided, impliedly warrant the quality of the thing sold.

2. An instruction to the jury that charging and receiving the full marketable price for a harvesting and binding machine imports a warranty by the seller that it will do as good work as other first class machines, is error.

3. The note sued upon was one given in renewal of the last of several notes originally given on the purchase of the machine, and was given after the machine had been used two seasons. The court instructed the jury that, if they found "that the machine was not worth, at the time the note was given, more than the defendant has already paid them, your verdict must be for the defendant." *Held*, error. The question of consideration depended upon the value of the machine, not at the time the renewal note was gived, but at the time the machine was bought.

(Syllabus by the court.   Opinion filed Feb. 14, 1894.)

Appeal from circuit court, Roberts county. Hon. J. O. ANDREWS, Judge.

Action on a promissory note. There was a verdict for defendant, and, from an order denying a new trial, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*George F. Miller* and *F. V. Brown*, for appellant.

No brief for respondent.

FULLER, J.   This action is based on a promissory note for $100, which the defendant executed and delivered to the plaintiff on the 27th day of April, 1886. Plaintiff demands judgment for $100 principal and $54.30 interest according to the recital of said note. On the 10th day of August, 1884, the defendant bought a McCormick self-binding harvester, and in settlement therefor gave two notes, the aggregate amount of which was $225, and in October of that year he paid one of the notes, which, with accrued interest, amounted to $114. On the 27th of April, 1886, he paid $18 on the note remaining unpaid, and

gave the note in suit in renewal thereof.    In effect, the defend-
ant alleges in his answer that the machine was warranted to do
good work, and that, relying upon such warranty, he made the
purchase, and executed  the  original  notes therefor.    He also
alleges  that  the  bindery  was so defective in construction and
material that it failed  to  properly bind the grain, and thereby
occasioned great loss, and that said  machine was not worth the
sum of $225, as represented by the plaintiff, nor any sum what-
ever.    There was a trial to a jury, and a verdict for the defend-
ant.    Plaintiff appeals from an order refusing a new trial.

In effect, the defendant testified that, at the time he pur-
chased the machine, the  agent  warranted  it to do good work;
that  he  had  used  the  machine  five years, more or less; that
once it broke down, and he employed one  of  his  neighbors to
help him with another binder, while he was gone to Milbank to
buy extras; that there was some defect  or  imperfection about
that part of the machine which binds or ties the grain, and that
many of the bundles were not bound.    He also testified that an
expert in the employ of the plaintiff adjusted the difficulty dur-
ing the harvest of 1885, so that the machine worked fairly well
for three or four days, and then began to throw the grain occa-
sionally.    Other witnesses corroborated these statements of de-
fendant, and from their testimony it  further  appears that the
gearing was out of order upon at least one occasion, so that the
machine could not work well.    There is  no  evidence  that de-
fendant operated  the machine with proper care, or that he no-
tified the agent from  whom  the  binder  was  purchased, save
upon one occasion, that the machine was  not doing good work,
nor that he ever offered to return  the  machine  to such agent,
or any other agent, of the plaintiff.    Defendant further testified
that a certain collector, in the year 1886, promised and agreed
to see that the  machine  was  put in good order, and upon that
assurance he gave the note in suit as  a  renewal  of one of the
original notes remaining unpaid at that time.    To the introduc-
tion of this evidence  numerous  objections  were  interposed,

which are presented in the assignment of error, and which are not likely to occur upon a retrial of the cause, which we are disposed to believe should be granted, for reasons hereafter mentioned.

At the conlusion of the evidence the court gave, among others, the following instructions: "Now, as a matter of law, the court instructs you that any person selling personal property in the state of South Dakota, or, to be more explicit, that in this action, at the time this plaintiff sold the machine to the defendant, he did warrant—whether anything was said about it or not—providing the full marketable price was asked and charged for the machine, and it was sold as a binder and harvester, he did warrant it to do good work; that is, such work as other good first class machines would do; that is, he warranted it to cut and bind the grain—that is all. It wasn't warranted to thresh the grain, or to do anything else but to cut and bind the grain. That is what the machine was sold for; what the defendant bought it for. In addition this warranty which the law gives, the defendai t claims there was a special statement or warranty by this plaintiff. Whether there was or not is for you to determine. But at least, as a matter of law, there was an implied warranty that it should do good work," It neither appears from the pleadings nor proof that plaintiffs manufactured the machine which defendant purchased, and for which the note in suit was given; and the question as to whether the plaintiff, at the time of the purchase and sale, expressly warranted the binder in any particular material to the issues in this case, was, in our opinion solely a question for the jury, uninfluenced by an implied warranty as specific as the above instruction indicates. Section 3628 of the Comp. Laws is as follows: "Except as prescribed by this article, a mere contract of sale or agreement to sell does not imply a warranty." Section 3633 is as follows: "One who sells or agrees to sell an article of his own manufacture, thereby warrants it to be free from any latent defects, not disclosed to the buyer, arising

from the process of manufacture, and also that neither he nor his agent in such manufacture has knowingly used improper material therein." We think, therefore, that it was error to thus instruct the jury.

The court further instructed the jury as follows: "If you should find that at the time the note was given, that there was no consideration passed to this defendant—that is to say, that if you find that at the time this defendant, Watson, gave this note, that his machine was entirely worthless,—then, in that event, there was no consideration for this note, and this plaintiff cannot recover;  *  *  *  that, if you find that the machine was not worth, at the time the note was given, more than the defendant has already paid, then your verdict must be for the defendant." The undisputed evidence is that the note in suit was given on the 27th day of April, 1886, to renew one of the notes executed on the 10th day of August, 1884, at the time the machine was sold and delivered; and the defendant, by procuring an extension of time in which to pay his note, could not obtain rights that would enable him to come into court after his machine may have been worn out, or by his negligence rendered worthless, and thereby defeat the payment of such note. For the purpose of this action the consideration for the note. and all questions affecting it, including the value of the machine, relate back to the date of purchase, and the status of the parties is just as it would have been had no renewal note been given. We are therefore of the opinion that the verdict should have been set aside, and a new trial granted. The order of the circuit court refusing a new trial is therefore reversed, and the cause remanded for a new trial.